IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| KRISTEE ANN BOYLE, individually, and as Personal Representative of the Estate of PEYTON ALEXANDER HAM | * * * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-22-0884 |
| JOSEPH CHARLES AZZARI JR., | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Kristee Ann Boyle, individually and in her capacity as personal representative of the estate of Peyton Alexander Ham ("Decedent"), brings this action against Defendant Joseph Azzari Jr. alleging violations of Decedent's Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983, (Count I against Defendant in his individual capacity); various state tort claims: Assault (Count II); Battery (Count III); and Intentional Infliction of Emotional Distress (Count IV); and a survival action under Md. Code Ann., Est. & Trusts §7-401(y) (Count V). Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 10.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion is granted.

---

[1] Also pending before the Court is Defendant's Consent Motion for Extension of Time to File Response to Complaint, ECF No. 9, and Defendant's Consent Motion for Extension of Time to File Reply to Plaintiff's Response, ECF No. 14, both of which are granted.

1

I.     BACKGROUND[2]

Plaintiff Kristee Boyle is the mother of Peyton Alexander Ham, and the personal representative of the estate of Peyton Alexander Ham. ECF No. 1 at 1.[3] Defendant Joseph Azzari, Jr. is a Trooper with the Maryland State Police. *Id.* ¶ 7.

On April 13, 2021, Defendant Azzari was on duty as a Maryland State Trooper, when he received a county-wide dispatch reporting a man with a gun in a neighborhood nearby his location. *Id.* ¶¶ 7–10. According to the Complaint, Defendant Azzari responded to the "wrong address," arriving at the house next door to the address identified by dispatch, and drove there without activating his lights, sirens, or in-car camera. *Id.* ¶¶ 11–16. Upon exiting his vehicle, Defendant observed Decedent on the neighboring property and believed him to be holding a handgun which the Decedent pointed directly at Defendant Azzari. *Id.* ¶¶ 17–18. The gun was actually a toy gun. *Id.* ¶ 19.

Defendant Azzari shot approximately eleven rounds from his firearm at Decedent, at least one of which injured him. *Id.* ¶¶ 20–22. Decedent was still conscious and able to communicate. *Id.* ¶ 22. Defendant then reloaded his firearm and yelled and screamed at Decedent, at times getting close enough to touch the Decedent. *Id.* ¶ 26. Defendant Azzari observed a knife in the possession of Decedent and observed that Decedent had an injury to his right arm. *Id.* ¶¶ 28, 30. Defendant then stopped approximately fifteen to twenty-five feet from Decedent with his firearm pointed at Decedent while he was on his knees. *Id.* ¶¶ 31, 33. At least fifty-seven seconds had passed from the firing of the first round of shots before Defendant Azzari fired approximately

---

[2] Unless otherwise noted, the following facts are undisputed and construed in the light most favorable to the nonmoving party.
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

four additional rounds at Decedent, striking him with multiple rounds. *Id.* ¶¶ 34, 35. Decedent succumbed to his injuries. *Id.* ¶ 38.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any

reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendant's Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as alternatively seeking dismissal or summary judgment and attaches additional materials, as is the case here, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

4

(1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition," *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). "To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery could possibly create a genuine issue of material fact sufficient to survive summary judgment or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

### III.   DISCUSSION

Defendant Azzari contends that Plaintiff has failed to state a claim upon which relief can be granted, and that because there is no genuine issue of material fact, Defendant is entitled to summary judgment as a matter of law. ECF No. 10. The Court evaluates each Count in turn.

#### A.   Fourth and Fourteenth Amendment Claim Under § 1983 (Count I)

Defendant states that he is entitled to summary judgment on Plaintiff's § 1983 claim because (1) he was justified in using deadly force and (2) he has qualified immunity. ECF No.

10-2 at 7, 10. A § 1983 claim for excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, guarantees citizens the right to be secure in their persons against unreasonable seizures. *Id.* at 394.

"The Fourth Amendment's bar on unreasonable seizures prohibits the use of excessive force by a police officer in effectuating an arrest." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019). There is no question that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "To determine the constitutionality of a seizure [the court] 'must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Garner*, 471 U.S. at 7–8 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

"Several factors are considered in assessing the governmental interests at stake, including the 'severity of the crime at issue, [and] whether the suspect posed an immediate threat to the safety of the officer or others[.]'" *Brockington v. Boykin*, 637 F.3d 503, 506 (4th Cir. 2011) (citations omitted). A police officer may use deadly force if a suspect threatens an officer with a weapon. *Garner*, 471 U.S. at 12. The inquiry into excessiveness turns on the information possessed by the officer the moment the force is employed. *Harris*, 927 F.3d at 272. "Because police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving, the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided." *Brockington,* 637 F.3d at 506–07 (citing *Graham*, 490 U.S. at 396) (internal quotations omitted). Even where an initial use of

deadly force is reasonable, the repeated use of deadly force may be excessive if circumstances change in a material way. *Harris*, 927 F.3d at 268–69.

Qualified immunity protects government officials performing duties within the scope of their employment from suit under § 1983 as long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brockington,* 637 F.3d at 506. The qualified immunity inquiry is a two-step process which courts can evaluate in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). At step one, the court asks, "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the police officer's actions violated a constitutional right." *Harris*, 927 F.3d at 279 (quoting *Meyers v. Balt. Cty.*, 713 F.3d 723, 731 (4th Cir. 2013)). "At step two, the question is whether the right at issue was 'clearly established' at the time of the officer's conduct." *Id.* The first step of the qualified immunity inquiry, whether Decedent's constitutional rights were violated, requires determining whether Defendant's use of force was reasonable, thus merging with the Court's determination of whether Plaintiff has alleged a constitutional violation.

Here, the first round of shots fired by Defendant Azzari were justified by his belief that decedent was pointing a firearm at him. ECF No. 1 ¶ 21; ECF No. 10-5 (photograph of replica gun). Seemingly conceding that point, Plaintiff focuses on the second round of shots fired by Defendant Azzari. *See* ECF No. 13-1 at 2–3. Plaintiff's argument centers around the dispute over whether decedent made it to his feet with the knife and was approaching Defendant Azzari as Azzari contends or remained on his knees. This dispute is not material. Even taking Plaintiff's version of the facts as true, that Decedent was on his knees, never stood up, and never took a step towards Defendant, it is undisputed that approximately a minute after believing decedent was pointing a handgun at him and immediately before Defendant Azzari fired the second round of

shots at Decedent, Decedent was armed with a knife. *See* ECF No. 10-4 at 2 (picture of bloody knife found by Decedent's body). It is further undisputed that at the time of the brandishing of the knife and the second round of shots, Decedent was approximately fifteen to twenty-five feet away from Defendant. ECF No. 13-1 at 3 n.1; ECF No. 10-2 at 4. Thus, it was reasonable to conclude that decedent continued to pose an immediate threat of serious injury or death. Defendant's belief that Decedent was dangerous, armed with a knife immediately after pointing a firearm at him, and within approximately twenty feet of Decedent, is enough to justify his use of deadly force. *See Sigman v. Town of Chapel Hill*, 161 F.3d 782, 788 (4th Cir. 1998) (officers' perception that decedent had a knife in his hand and fatally wounding him was not unreasonable); *Anderson v. Russell*, 247 F.3d 125, 132 (4th Cir. 2001) (although mistaken, officer's decision to use deadly force was reasonable because he believed that Plaintiff was reaching for a handgun and thus posed a deadly threat). Thus, Defendant acted reasonably in using deadly force and there was no violation of Decedent's Fourth Amendment Constitutional right.[4]

### B. State Tort Claims – Assault, Battery, and Intentional Infliction of Emotional Distress (Counts II, III, and IV)

Defendant argues that Plaintiff's state tort claims fail because (1) Defendant acted reasonably in using deadly force and (2) Defendant has state statutory immunity. ECF No. 10-2

---

[4] Plaintiff argues that in the event the Court is inclined to grant Defendant's Motion, the Court should instead permit Plaintiff discovery pursuant to Fed. R. Civ. P. 56(d). Plaintiff's request for discovery focuses on (1) a photograph drawn by Defendant that depicts the location of where events took place, from which Plaintiff will use to deduce the distance between the Decedent and Defendant at the time the second shots took place; (2) a request for the final autopsy report; (3) a request to depose Defendant Azzari to explain the apparent differences in his two statements; (4) information as to Defendant's training; and (4) video footage from the day of the incident. ECF No. 13-1 at 17–19. The Court will deny this request as none of this information would change the Court's ruling. Plaintiff has already asserted that they "have had an opportunity to measure the distance between Defendant and Decedent and she believes it was approximately seventeen feet[.]" ECF No. 13-1 at 3 n.1. Furthermore, none of these additional facts would negate the fact that at the time of the second round of shots, Decedent was holding a knife after pointing what appeared to be a firearm at the Defendant. A witness provided by Plaintiff has corroborated that fact as does the photograph depicting the bloody knife found beside Decedent's body.

at 14–17, 18–19. Because the Court agrees that Defendant's use of force was reasonable, it does not address the immunity argument.

In Maryland, an assault is "any unlawful attempt to cause a harmful or offensive contact[.]" *Continental Cas. Co. v. Mirabile*, 52 Md. App. 387, 398–99 (1982). A battery is "the intentional unpermitted touching of the body of another that is harmful or offensive." *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 180 (1997). To state a claim for intentional infliction of emotional distress the conduct alleged must be "extreme and outrageous." *Continental Cas. Co.*, 52 Md. App. at 403.

A police officer will only be held liable for an assault or battery if their actions are not justified. *Koushall v. State*, 249 Md. App. 717, 728 (2021). "The law enforcement justification defense provides that if an officer uses only 'that force reasonably necessary to discharge his official duties ..., [the officer] is not liable civilly or criminally for the assault or battery that may result[.]'" *Id.* (quoting *Wilson v. State*, 87 Md. App. 512, 519 (1991)). The standard of review is one of a reasonable police officer similarly situated. *Id.* at 729. Because this Court has already determined that Defendant Azzari acted reasonably in using deadly force against the Decedent, Plaintiff's assault and battery claims fail, as does her intentional infliction of emotional distress claim because Defendant Azzari's reasonable conduct cannot be said to be "extreme and outrageous." *See Jackson v. Pena*, 28 F. Supp. 3d 423, 432 (D. Md. 2014) (plaintiff could not show extreme and outrageous conduct as required for intentional infliction of emotional distress claim because the Court determined the officers did not act unreasonably). Thus, the Court will grant summary judgment to Defendant on Plaintiff's state tort claims.

### C. Count V – Survival Action

Defendant argues that Plaintiff cannot sustain a survival action because there is no liability for the underlying state tort claims. ECF No. 10-2 at 17. Plaintiff brings her survival action pursuant to Md. Code Ann., Est. & Trusts § 7-401(y), which permits a personal representative to commence an action for which the decedent may have commenced or prosecuted. In "survival actions, recovery is limited to damages that the decedent could have recovered had the decedent survived and brought the action." *Beynon v. Montgomery Cablevision Ltd. Pshp.*, 351 Md. 460, 475 (1998). Because this Court has granted summary judgment in favor of Defendant on the underlying claims, Plaintiff can not maintain this action, and it will therefore be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion is granted. A separate Order follows.

Date: <u>January 10, 2023</u>                   _____/s/_____
                                                                            GEORGE J. HAZEL
                                                                            United States District Judge